UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL TROMAN, MITCHELL FEDER,
AHMED SHAKIR, STACEY MORIATES,
LEELA MARET, JANEK PATEL, JOSEPH
MIRAGLIA, JOHN READE, and ANTONIO
DONES,

                                    *Petitioners*,

                      -v-

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
and LEE SAUNDERS, PRESIDENT,

                                    *Respondents*.

16-CV-6948 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This action was commenced on September 2, 2016, in the Supreme Court of New York,

County of New York, by Michael Troman, Mitchell Feder, Ahmed Shakir, Stacey Moriates,

Leela Maret, Janek Patel, Joseph Miraglia, John Reade, and Antonio Dones  ("Petitioners").

(Dkt. No. 1.)  The action was removed to this Court on September 5, 2016, by the American

Federation of State, County and Municipal Employees and Lee Saunders, President

("Respondents").  (*Id.*)

On September 6, 2016, Petitioners filed an order to show cause why this Court should not

remand this matter to the Supreme Court, New York County.  (Dkt. No. 10.)  On September 9,

2016, Petitioners filed an order to show cause for a temporary restraining order and preliminary

injunction.  (Dkt. No. 14.)  Respondents oppose the relief sought by Petitioners in both instances.

This Court held a hearing on both motions on October 6, 2016.  For the reasons that follow, the

motions are denied.

## I.        Background

The Civil Service Technical Guild, also known as Local 375 ("Local 375"), is a local union affiliated with the American Federation of State, County and Municipal Employees ("AFSCME").  (Dkt. No. 16 at 4.)  Local 375 is a 7,500-member union representing engineers and skilled technical employees who work for New York City, the New York City Transit Authority, and the City University of New York.  (*Id.*)  This action arises from a conflict about Local 375's Executive Committee elections and actions taken by AFSCME in the wake of those elections.

In December 2015, Local 375 held an election to determine its Executive Committee. (Dkt. No. 22 at 6.)  This election led to a hearing before the AFSCME Judicial Panel in which it found violations of the AFSCME International Constitution sufficient to justify holding a rerun election.  (*Id.*)  In particular, the Judicial Panel found that emails were sent from improper domains—domains that were "intended to convey the status of an official Local 375, Chapter 8 website . . . [and] purport[ing] to be an official local union endorsement"—and to improper recipient addresses—"City of New York email addresses"—in violation of the International Constitution.  (Dkt. No. 21-6 at 14–15.)  As a result, a rerun election was held in May 2016.

Petitioners assumed office on May 27, 2016, and were compensated by Local 375 through August 26, 2016.  (*Id.* at 4.)  Following the rerun election, another series of election protests was filed and a second hearing was held before the Judicial Panel on July 7, 2016.  (*See* Dkt. No. 22 at 7.)  In an August 12, 2016, interim decision, Richard Abelson, Chairperson of the Judicial Panel, again concluded that the International Constitution had been violated.  (*See id.*) Regarding the rerun election, Abelson found that "[t]he evidence established that the conduct which violated the Election Code . . . of the International Constitution did not abate after the

initial election, and if anything, has become ingrained in Local 375." (Dkt. No. 21-2 at 10.)
Moreover, he wrote, "the level of dysfunction and what appears to be intentional resistance to
comply with the Election Code by those who seek to hold office in Local 375 is of great
concern." (*Id.*) Abelson found that another rerun election would be fruitless and "would
continue what appears to be a now endless spiral of ignoring AFSCME's Election Code and
would further the dysfunction now evident in this Local Union." (*Id.* at 11.)

On August 29, 2016, AFSCME International President Lee Saunders imposed an
emergency administratorship over the affairs of Local 375. (Dkt. No. 20 at 3.) In a letter to
Petitioners, Saunders explained that he had "concluded . . . that the local is acting in violation of
the International Constitution by its repeated engagement of conduct that violates several
provisions of the Bill of Rights for Union Members, including their right to fair and democratic
elections and their right to full participation in the decision making processes of the union."
(Dkt. No. 21 at 7–8.) In a declaration signed September 22, 2016, Saunders further elaborated
that his "opinion that there existed an emergency that warranted an administratorship was based
on (i) the nature and the severity of the conduct and the findings made by the Judicial Panel, (ii)
the fact that this represented a repetition of conduct that the Judicial Panel had previously
prohibited in the first election, and (iii) the fact that this conduct had and was likely to continue
to directly infringe on the rights of the union membership to a fair and democratic election and
the right to participate in the decision making processes of the union." (*Id.* at 9.)

Respondents also contend that, at the time he was considering his decision to impose an
administratorship, Saunders was aware of a number of other problems at Local 375 in addition to
the election-related issues. (See Dkt. No. 22 at 8–9.) These problems include charges against
members of the Executive Committee for allegedly acting to keep elected members from taking

office; charges against Mr. Feder (a Petitioner) for allegedly failing to issue checks to charitable organizations despite approval to do so; charges against Mr. Shakir, Mr. Patel, and Mr. Feder (all Petitioners) for allegedly failing to distribute funds; charges against Ms. Moriates (a Petitioner) for failing to recognize the legitimacy of a chapter president's election; charges against Mr. Troman, Ms. Moriates, and Mr. Shakir for filing an EEOC charge against the City of New York in violation of the AFSCME International Constitution; charges by Ms. Moriates against individuals for refusing to send certain letters; and charges filed against Mr. Troman and Mr. Feder for allegedly failing to carry out a decision of the Executive Committee permitting the outgoing President to use two months of his leave balance.  (*Id.*)

Upon imposing the administratorship, Saunders appointed John English ("English") as the Administrator of Local 375 and referred the matter to the AFSCME Judicial Panel for a hearing before an Administratorship Hearing Board.  (Dkt. No. 20 at 3.)  On August 31, 2016, English disbanded the Executive Committee and canceled all future meetings.  (Dkt. No. 15 at 4.)

On September 2, 2016, Petitioners initiated this action in the Supreme Court of New York, County of New York, which was then removed to this Court by Respondents on September 5, 2016.  (Dkt. No. 1.)  In this Court, Petitioners seek to have this case remanded to New York Supreme Court.  In the alternative, they move for a preliminary injunction dissolving the administratorship and reinstating Petitioners to the Executive Committee

Meanwhile, on September 16, 2016, the Administratorship Hearing Board of AFSCME conducted a hearing on the imposition of the administratorship and, on October 4, 2016, issued a decision upholding the imposition of the administratorship.  (*See* Dkt. No. 35.)  In its opinion, the Hearing Board enumerated a number of problems in the governance of Local 375.  (*See* Dkt.

No. 35-1 at 8–11 (discussing some of the 96 incidents brought before the Judicial Panel regarding Local 375 and its officers as well as the history of undemocratic election processes employed by Local 375).)  Pursuant to the AFSCME International Constitution, the Hearing Board decision is currently appealable to the International Executive Board.  (Dkt. No. 21-3 § 42.).

## II.   Discussion

This is an action brought by employees against a labor union under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) ("LMRA"), and thus falls within this Court's jurisdiction under 28 U.S.C. § 1331.

The two issues before the Court are: (1) whether the Court should remand this case to New York State Supreme Court, and (2) whether the Court should grant Petitioners' request for a preliminary injunction to dissolve the administratorship and reinstate the Executive Committee. Each is addressed in turn.

### A.   Remand

Petitioners put forth two theories for why this Court should remand the current proceedings to New York State Supreme Court.  First, Petitioners argue that this Court lacks subject matter jurisdiction because they are not "employees" for purposes of the LMRA. Second, Petitioners argue that Respondents' removal to federal court was procedurally improper because it was premature.

#### 1.   Subject Matter Jurisdiction

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States."  29 U.S.C.

§ 185(a).  There is no dispute that the AFSCME International Constitution is a "contract" within the meaning of the LMRA.  In *United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada, AFL-CIO v. Local 334*, 452 U.S. 615 (1981), the Supreme Court held that a parent union's constitution is a contract between labor organizations under Section 301(a), and therefore a federal court has jurisdiction under the section over a suit by a local against its parent international union.

The parties, however, dispute whether the Petitioners are "employees" within the meaning of Section 301 of the LMRA and, thus, whether this Court has subject matter jurisdiction over the action.  Whether jurisdiction is proper, therefore, hinges on the definition of "employer" and "employee" under this section.

The definitions set forth in the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–69, apply to the LMRA.  *See* 29 U.S.C. § 142(3) ("The terms . . . 'employer' [and] 'employee' . . . shall have the same meaning as when used in [the NLRA].").  The terms "employer" and "employee" are expressly defined in 29 U.S.C. § 152(2)–(3):

> (2) The term "employer" . . .  shall not include the United States or any wholly owned Government corporation . . . or any State or political subdivision thereof. . . .
>
> (3) The term "employee" . . . shall not include any individual employed . . . by any other person who is not an employer as herein defined.

As such, federal courts have consistently held that public employees cannot bring claims under LMRA provisions.  *See Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F. Supp. 2d 383, 395–96 (S.D.N.Y. 2002) (collecting cases).  "For the purposes of the [LMRA], courts within this district have considered an employee of the City of New York to be a public, and not

a private, employee." *Commer v. McEntee*, No. 00 Civ. 7913, 2006 WL 3262494, at *17

(S.D.N.Y. Nov. 9, 2006).

Many such cases, however, arise in the context of a "hybrid" claim, where an employee

sues a public employer under the LMRA for violating, say, a collective bargaining agreement,

and sues a union for breach of the duty of fair representation.  In such cases, courts have found

that they lack subject matter jurisdiction because a public employer is not an "employer" and,

therefore, the employment relationships were outside the scope of the statute.  *See, e.g.*, *Moir v.*

*Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 271 (6th Cir. 1990); *Manfredi v.*

*Hazleton City Auth., Water Dep't*, 793 F.2d 101, 103 (3d Cir. 1986).  In some cases, however,

"[a] public-sector union employee may be considered a 'private' employee under the LMRA

based on his employment by the union." *Khan v. Cassar*, No. 12 Civ. 6010, 2012 WL 6674432,

at *3 (E.D.N.Y. Dec. 21, 2012).  For example, in *Commer*, Judge Sweet held that a local

AFSCME union president, despite his concurrent employment with the City of New York, "had

been employed by the union and was therefore a private employee . . . until he was removed

from union office on May 1, 2000." *Commer*, 2006 WL 3262494, at *17.

Here, Petitioners are similarly situated, as they are employees of the union as well as

employees of the City of New York.  Respondents point to four facts in particular to support their

contention that the Petitioners are employees within the meaning of the LMRA.  First, each

Petitioner received compensation from Local 375 for their service as elected officers, ranging

from $6,800 to over $34,000 annually (Dkt. No. 26 at 4); second, each Petitioner completed an

IRS W-4 form identifying Local 375 as an employer (*id.*); third, Local 375 made federal and

state payroll tax filings with the IRS and New York State designating itself as an employee (*id.* at

4-5); and fourth, Local 375 is governed internally without any input, control, or resources from

any public employer, including the City of New York (*id.* at 5). Moreover, Petitioners do not seek any remedy with respect to their employment with any public employer, but rather seek remedies stemming only from their employment with the union.

Petitioners' reliance on *Khan*, 2012 WL 6674432, to challenge this Court's jurisdiction is misplaced. There, Judge Weinstein found that jurisdiction was improper in a case where "Plaintiffs' compensation [as union officers] was primarily assumed by the City" and where "the dispute [was] over the [union]'s mode of representation of its members *with the* City—not over conditions of their employment by the union." *Id.* at *3 (emphasis added). Here, where there is no allegation that the City compensates the local union officers for their work as such and where the dispute is solely over the Petitioners' employment by the union, Respondents are "employees" for purposes of Section 301 of the LMRA.[1] Accordingly, this Court has subject matter jurisdiction of this case.

### 2.    Removal from State Court

Petitioners further argue that this case was improperly removed from state court because it had not yet been initiated. (Dkt. No. 12 at 3.) That is, the state court petition was submitted electronically on Friday, September 2, 2016, but no index number was assigned to the case until Tuesday, September 6, 2016. (Dkt. No. 12, Ex. C, Ex. D.) The proceeding was removed to federal court in the interim, on Monday, September 5, 2016, before the index number was assigned. (Dkt. No. 1.)

---

[1]    Further, Petitioners do not seem to disagree that this court should be held to have federal jurisdiction over this and other similarly situated actions. In their reply, Petitioners note that they "do not object to federal jurisdiction on principle" (Dkt. No. 32 at 1), and argue that "[i]f the Federal Courts have jurisdiction to enforce—shape, interpret, and apply—international union constitutions, they cannot do it just some of the time" (*id.* at 4).

Petitioners argue that "[i]t is axiomatic that a case cannot be removed before its inception."  (Dkt. No. 12 at 3 (quoting *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th Cir. 2010)).)  This, however, is not a reason to remand the case, as the action was properly commenced and then properly removed.

Under New York State law, "[i]n an action which is commenced by filing, a claim asserted in the complaint is interposed against the defendant . . . when the action is commenced." N.Y. C.P.L.R. § 203(c).  Filing does not require that the clerk of court assign an index number to the action.  Rather, "filing shall mean the delivery of the summons with notice, summons and complaint or petition to the clerk of the court in the county in which the action or special proceeding is brought or any other person designated by the clerk of the court for that purpose." *Id.* § 304(c).  "Where filing is by electronic means, the clerk shall, in accordance with rules promulgated by the chief administrator, forthwith notify the filing party of the index number and the date and time of filing."  *Id.* § 304(e).  *See also De Maria v. Smith*, 197 A.D.2d 114, 117 (3d Dep't 1994) ("Pursuant to [§ 304], it is the actual filing of a summons and complaint or a summons with notice which commences the action . . . .").

Petitioners thus commenced this action on September 2, 2016, with the filing of their petition and the action was properly removed thereafter.  That the clerk of court did not assign an index number before the case was removed, likely because the removal was effectuated on a federal holiday, does not require this Court to remand the matter to state court.

### B.    Preliminary Injunction

Petitioners seek to enjoin the continuing imposition of an administratorship (or trusteeship) over Local 375 by AFSCME, the parent union.  President Saunders imposed the administratorship after finding that an "emergency" existed warranting the suspension of the

elected officers.  Petitioners contend that no emergency existed and that the imposition of the administratorship was therefore improper under the terms of the AFSCME International Constitution.

A party seeking a preliminary injunction must establish (i) irreparable harm should injunctive relief not be granted and (ii) either a likelihood of success on the merits or sufficiently serious factual questions making a fair ground for litigation with a balance of hardships tipping in the movant's favor.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 789 (2d Cir. 1994).

### 1.    Irreparable Harm

 "As elected officials of the District Council removed from office as a result of the imposition and continuation of the trusteeship, the plaintiffs have established irreparable harm." *Mason Tenders Dist. Council of Greater New York v. Laborers' Int'l Union of N. Am.*, 884 F. Supp. 823, 833 (S.D.N.Y. 1995).  There is ample law that the imposition of a trusteeship or administratorship interferes with a local union's right of self-determination and that resulting "damage to a labor union's reputation and image constitute irreparable injury."  *Id.* (citing cases). Accordingly, Petitioners have made the requisite showing of irreparable harm for purposes of preliminary injunctive relief.

### 2.    Likelihood of Success on the Merits

To justify a preliminary injunction against a trusteeship imposed by a parent union on a local subordinate union, the Petitioners must first show "by the preponderance standard that [Respondents] had no valid 'claim of right' to impose the trusteeship."  *See id.* at 832 (citing *Local 810*, 19 F.3d at 791-92).  This determination turns on whether the imposition of the trusteeship complied with the governing constitution of the parent union.  *Id.*  If Petitioners are

able to "meet their burden at this first step, then in order to complete their showing of the likelihood of success on the merits, they will be required, as a second step, to show bad faith or improper purpose by the preponderance of the evidence." *Id.* If, on the other hand, Petitioners cannot demonstrate by a preponderance of the evidence that the Respondents had no valid claim of right to impose the trusteeship, "this will give rise to [the] presumption that [Respondents'] actions were valid," and Petitioners can succeed only by showing "bad faith or improper purpose by clear and convincing evidence." *Id.*

Ultimately, the decision whether to grant preliminary injunctive relief to enjoin the imposition of a union administratorship or trusteeship is left to the discretion of the district court. *See id.* at 832 (finding that "whether to grant preliminary injunctive relief enforcing a labor union trusteeship is left to the district court's discretion" and collecting cases).

Petitioners' argument fails at the first step as they are unable to establish that Respondents "had no valid 'claim of right' to impose the trusteeship" as evidenced by a violation of the AFSCME International Constitution. *Id.* Specifically, Petitioners unsuccessfully challenge both whether an "emergency" existed that justified imposition of an administratorship and whether the hearing held on September 16, 2016, was a "fair hearing."

Moreover, in light of the federal judicial policy against interference in union affairs and the discretionary judicial policy requiring union employees to exhaust their intra-union remedies before seeking judicial review, this Court finds that the Petitioners have not carried their burden to demonstrate they are entitled to the injunctive relief they seeks.

### a.    "Emergency" Trusteeship

Pursuant to Article IX, Section 37 of the AFSCME International Constitution, the International President may impose an administratorship on a subordinate body "[i]f the

International President shall find . . . (6) that a subordinate body is acting in violation of this Constitution or of any lawful order of the Convention, the International Executive Board, or the International President, *so that in the opinion of the International President an emergency situation exists*, the International President is empowered to place such subordinate body under administratorship pending notice and hearing."  (Dkt. No. 21-3 § 37 (emphasis added).)

Petitioners claim that President Saunders lacked a good faith basis on which to conclude that an emergency administratorship was warranted.  (Dkt. No. 22 at 19–20.)  Respondents argue that "(i) Article IX, Section 37 of the International Constitution grants International President Saunders both the authority and discretion to make such a decision, and (ii) the record demonstrates that International President Saunders had a good faith basis to exert such authority in the manner that he did."  (*Id.* at 20.)

As discussed above, to succeed on the merits of their claim, Petitioners must show by a preponderance of the evidence that Respondents did not have a valid claim of right to impose the emergency trusteeship.  *Mason Tenders*, 884 F. Supp. at 832.  But Petitioners are unable to demonstrate that President Saunders failed to comply with the AFSCME International Constitution, which allows him broad discretion to impose an emergency trusteeship if "a subordinate body is acting in violation of [the] Constitution" and "in the opinion of the International President an emergency situation exists."  (Dkt. No. 21-3.)  The numerous allegations of foul play at Local 375, discussed at length above, suggest that Saunders had a sufficient foundation on which to base his opinion.  Indeed, the AFSCME Judicial Panel had *twice* found that Local 375's election procedures violated the International Constitution, this coming alongside the laundry list of non-election-related issues of which Saunders was aware when he was making his decision.

12

Petitioners attempt to undermine the claim that the President was of the opinion that an emergency existed in the instant situation by reference to "20 years of turbulence . . . more dramatic than anything which has recently occurred." (Dkt. No. 16 at 20.) But reference to other incidents that did not constitute emergencies is insufficient to demonstrate that the present situation did not rise to an emergency in the opinion of the President. Petitioners also point to various irrelevant facts to challenge Saunders' claims of dysfunction including, among others, the percentage of members who voted in the rerun election, the Local's history of monthly meetings, and the fact that the meetings are well attended. (*See* Dkt. No. 16 at 19). Petitioners do not show that it is likely that they would be able to prove by a preponderance of the evidence that President Saunders did not have a valid claim to impose the administratorship under the AFSCME International Constitution.

### b.  Fair Hearing

The AFSCME Constitution provides that after the President imposes an administratorship, "the Chairperson of the Judicial Panel shall appoint from among the members of the Panel an Administratorship Hearing Board." (Dkt. No. 21-3 § 37.) Each party is allowed to present their views to the Hearing Board. (*Id.* § 40.) It is the Hearing Board that determines whether the subordinate body actually engaged in the conduct that caused the International President to impose the administratorship. (*Id.* § 41.) The AFSCME Constitution provides that after the President imposes an administratorship, "the Chairperson of the Judicial Panel shall appoint from among the members of the Panel an Administratorship Hearing Board." (*Id.* § 37.) Each party is allowed to present their views to the Hearing Board. (*Id.* § 40.) It is the Hearing Board that determines whether the subordinate body actually engaged in the conduct that caused the International President to impose the administratorship under Section 37. (*Id.* § 41.)

13

Petitioners challenge whether the hearing held by the Judicial Panel was a "fair hearing." (*See* Dkt. Nos. 16 at 22–24, 36.)  They argue that "a fair hearing is required for the valid imposition of a trusteeship."  (*Id.* at 23 (citing *Becker v. Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO*, 900 F.2d 761, 768 (4th Cir. 1990)).[2]

However, Respondents sufficiently satisfied their procedural obligations under the AFSCME Constitution.  Upon the imposition of the trusteeship, Saunders referred the matter to the AFSCME Judicial Panel for a hearing before an Administratorship Hearing Board.  (Dkt. No. 20 at 3.)  The Administratorship Hearing Board then conducted a hearing, in which a number of the Petitioners meaningfully participated, and ultimately issued a decision upholding the imposition of the administratorship.  (*See* Dkt. No. 35.)

---

[2]     Petitioners' argument relies on cases interpreting the procedural requirements imposed by the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401, *et seq.*  After the hearing on the preliminary injunction, Petitioners moved to amend their complaint to add a cause of action under the LMRDA.  (Dkt. No. 39.)  Regardless of the outcome of that motion, this Court finds that the LMRDA's "minimum fair hearing requirement of notice and an opportunity to defend," *Becker*, 900 F.2d at 768, was satisfied here. *See Woods v. Dist. Council for New York City & Vicinity of the United Bhd. of Carpenters & Joiners of Am.*, No. 14-CV-9057, 2015 WL 3763916, at *2 (S.D.N.Y. June 16, 2015) ("[T]he LMRDA protects only against a breach of fundamental fairness." (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001)).  Petitioner's argument that it was denied the right to proper notice and counsel at the September 16, 2016, hearing is unavailing.  (*See* Dkt. No. 36.)  First, there is no colorable claim that Petitioners were unaware of the nature of the hearing due to insufficient notice.  The dissolution of the Executive Board was made known to each Petitioner individually (*see id.* at Ex. BB), and the Petitioners were given explicit notice that the hearing would address the propriety of the imposition of the administratorship (*see id.* at Ex. CC).  Second, it is not clear under either the LMRA or the LMRDA that there is a right to counsel; but even if there is, Petitioners have not shown that their counsel was in fact excluded from the hearing.  (*See id.* at Ex. AA (unanswered email inquiry from Petitioners' counsel to Respondents' counsel regarding whether he may attend the hearing).)

### 3.    Exhaustion

Petitioners' failure to exhaust remedies available within the union itself before resorting to a plea for injunctive relief in this Court, as well as this Court's policy of noninterference in union affairs, further counsel against granting Petitioners' request for injunctive relief.

"A court may require an employee to exhaust intraunion remedies prior to bringing suit against his union.  This requirement, however, is not absolute; rather, it is discretionary with the court." *Johnson v. Gen. Motors*, 641 F.2d 1075, 1078 (2d Cir. 1981).

Respondents argue that Petitioners have "failed to exhaust the internal remedies provided by AFSCME's International Constitution, to which they are bound."  (*Id.* at 16.)  While the Administratorship Hearing Board held a hearing on September 16, 2016, and issued a decision upholding the imposition of the administratorship on October 4, 2016 (Dkt. No. 35), that decision remains appealable to the International Executive Board (Dkt. No. 21-3 § 42).

In determining whether to apply the exhaustion doctrine, this Court looks to "whether the available procedures are adequate and reasonable in light of the facts of the particular case" as well as the balance between "the right of union members to institute suit against the policy of judicial noninterference in union affairs." *Johnson*, 641 F.2d at 1079.

There are three factors to consider: (1) "whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim"; (2) "whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks"; and (3) "whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Woods*, 2015 WL 3763916, at *4 (alteration in original) (quoting *Clayton v. International Union, UAW*, 451 U.S. 679, 689 (1981)).

First, Respondents note that there is no implication that either the Administratorship Hearing Board or the AFSCME International Executive Board, to which the decision is appealable, "are or would be hostile in any manner to Petitioners."  (Dkt. No. 22 at 16.)  Indeed, there is no indication that the September 16, 2016, hearing was in fact hostile to Petitioners, nor is there any reason to believe that the International Executive Board, to which any appeal must be made, would exhibit any hostility.  That Board comprises individuals "from different geographic regions of the country and the AFSCME International Union places additional safeguards to ensure fairness and objectivity, including the fact that no member of the Judicial Panel shall participate" in the appeal.  (Dkt. No. 22 at 4–5.)

Second, the intra-union procedures are capable of providing the relief sought.  (*Id.* at 17 ("Nothing in Article IX of the International Constitution would limit the Administratorship Hearing Board or the International Executive Board from granting . . . relief to Petitioners.").)

Third, the proceedings do not appear to be unreasonably delayed.  The Administratorship Hearing Board produced its decision in less than three weeks, and the parties indicated at oral argument that the International Executive Board meets quarterly, with its next meeting scheduled to take place in December 2016.  (*See* forthcoming transcript to Show Cause Hearing held on October 6, 2016.)

All that Petitioners provide in terms of counterargument is the allegation that "the AFSCME Constitution does not meet federal muster, so an appeal within the union would be meaningless."  (Dkt. No. 30 at 6.)  They rely on the holding of *Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 81 (2d. Cir. 1961), which deemed exhaustion of intra-union remedies to be unnecessary where "the internal union remedy is uncertain and has not been specifically brought to the attention of the disciplined party, the violation of federal law clear and

16

undisputed, and the injury to the union member immediate and difficult to compensate by means of a subsequent money award."  However, the Second Circuit in *Detroy* confirmed that "[t]he absence of any of these elements might, in light of Congressional approval of the exhaustion doctrine, call for a different result."  *Id.*

Here, because the intra-union remedies appear adequate and requiring the parties to exhaust their remedies would not unreasonably delay the opportunity for judicial intervention, Petitioners are not excused from the general requirement that they exhaust their internal remedies before filing suit.  *See Fort v. Am. Fed. of State, County & Municipal Emps.*, 375 Fed. Appx. 109, 113 (2d Cir. 2010) ("[W]e doubt that any abuse could be identified, in light of plaintiffs' success in defending against prior charges of misconduct, the absence of any suggestion that the AFSCME appeals process was incapable of exonerating them, and the availability of two levels of internal appeal within a period of several months."); *see also* Dkt. No. 22 at 18 (quoting May 15, 2009 Hearing Transcript in *Fort v. Am. Fed. of State, County & Municipal Emps., AFL-CIO*, No. 09 Civ. 2265).

In light of the federal policy favoring noninterference in labor matters, *see Johnson*, 641 F.2d at 1079, as well as the broad discretionary authority conferred on President Saunders by the governing AFSCME International Constitution, Petitioners are unable to meet their burden for a preliminary injunction.

**III.    Conclusion**

For the foregoing reasons, Petitioners' motion to remand and motion for a preliminary injunction are DENIED.

SO ORDERED.

Dated:    October 13, 2016
          New York, New York

                                        _____
                                                J. PAUL OETKEN
                                            United States District Judge